# NEW YORK LIFE INSURANCE COMPANY *v.* DEER LODGE COUNTY.

### ERROR TO THE SUPREME COURT OF THE STATE OF MONTANA.

No. 56. Argued November 11, 1913.—Decided December 15, 1913.

The sanction of the rule of *stare decisis* urges this court against reversing a long series of decisions where state legislation has been enacted in reliance thereon, and the reversal would involve the promulgation of a new rule of constitutional inhibition on state legislation necessitating readjustment of policy and laws.

After reviewing *Paul* v. *Virginia*, 8 Wall. 168, decided by this court in 1868, and other cases in which that case was followed, this court adheres to the decisions in those cases to the effect that the issuing of an insurance policy is not commerce but a personal contract, and that the regulations of a State in regard to policies delivered in the State by non-resident insurance corporations and taxes imposed on said corporations, are not, if otherwise legal, unconstitutional as a burden upon interstate commerce. *The Lottery Cases*, 188 U. S. 321, and *International Textbook Co.* v. *Pigg*, 217 U. S. 91, distinguished.

The fact that there are great numbers of transactions therein does not give to a business any other character than magnitude; it cannot transform a business from one which is subject to state regulation to one beyond that regulation as interstate.

The fact that the mails are used in consummating contracts for insurance between a corporation in one State and the insured in another, does not give character to the negotiations or the contract nor does it make the latter interstate commerce.

The fact that after the insured receives his policy of insurance it becomes subject to sale and transfer, does not make the business of issuing it commerce.

The statute of Montana imposing a tax on insurance corporations doing business in the State measured by the excess of premiums received over losses and expenses incurred within the State, is not unconstitutional as a burden on, or interference with, interstate commerce.

43 Montana 243, affirmed.

THE facts, which involve the constitutionality of a statute of Montana imposing certain taxes on insurance corporations, are stated in the opinion.

*Mr. James H. McIntosh* and *Mr. Roscoe Pound*, with whom *Mr. Robert L. Clinton* was on the brief, for plaintiff in error:

In this case the issue differs from prior insurance cases such as *Church* v. *La Fayette &c. Co.*, 66 N. Y. 22; *Ducat* v. *Chicago*, 10 Wall. 410; *Hooper* v. *California*, 155 U. S. 648; *Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566; *New York Mutual* v. *Armstrong*, 117 U. S. 591; *New York Life* v. *Cravens*, 178 U. S. 389; *Noble* v. *Mitchell*, 164 U. S. 367; *Nutting* v. *Massachusetts*, 183 U. S. 552; *Paul* v. *Virginia*, 8 Wall. 168; *Phila. Fire Ass'n* v. *New York*, 119 U. S. 110; *Swift* v. *United States*, 196 U. S. 375.

The issue here also differs from those in cases involving labor or emigration agencies, bucket shops, and private banks. *Engle* v. *O'Malley*, 219 U. S. 128; *Ware* v. *Mobile Co.*, 209 U. S. 405; *Williams* v. *Fear*, 179 U. S. 270.

In this case the course of the company's business is within the very object of the commerce clause.  Bancroft, History &c. of Constitution, chapter IV; Bryce, Studies in Hist. and Jurisprudence, 222; *City* v. *Royal Exchange &c.*, 5 Ala. App. 318; Farrand, Records of Federal Constitution, I, 243, 247, 275, 496, 501, 546; III, 666.

The course of business here is within *International Text Book Co.* v. *Pigg*, 217 U. S. 91, and the *Lottery Case*, 188 U. S. 321.  See also *Hoke* v. *United States*, 227 U. S. 308; *Kidd* v. *Pearson*, 128 U. S. 1; *McCall* v. *California*, 136 U. S. 104; *Pensacola Tel. Co.* v. *West. Un. Tel. Co.*, 96 U. S. 1; *Richmond* v. *So. Bell Tel. Co.*, 174 U. S. 761; *Robbins* v. *Shelby Co.*, 120 U. S. 489; *West. Un. Tel. Co.* v. *Pendleton*, 122 U. S. 347.

If *Paul* v. *Virginia*, 8 Wall. 168, is decisive of this case, then it is also decisive against the court's decision in *International Text Book* and *Lottery Cases*, supra.  *Hooper* v. *California*, 155 U. S. 684; *New York Life* v. *Babcock*, 104 Georgia, 67; *Xenos* v. *Wickham*, L. R. 2 H. L. 296.

The company's business as performed by it is interstate commerce within all the decisions of the court and not in conflict with any decision.  Cases *supra* and see also *Adair* v. *United States*, 208 U. S. 176; *Addyston Pipe &c. Co.* v. *United States*, 175 U. S. 211; *Butler Bros.* v. *United States*, 156 Fed. Rep. 1; *Covington Bridge* v. *Kentucky*, 154 U. S. 204; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Hopkins* v. *United States*, 171 U. S. 278; *New York* v. *Miln*, 11 Pet. 102; *Railroad Co.* v. *Husen*, 95 U. S. 465; *Welton* v. *Missouri*, 91 U. S. 275.

The object and purpose of the commerce clause sustains plaintiff's claim.  1 Hamilton, Works, 179, 203; *Henderson* v. *Mayer*, 92 U. S. 259; *Howard* v. *Ill. Central*, 207 U. S. 463; 2 Madison, Papers, 859; *Ratterman* v. *Western Union*, 127 U. S. 411; Report of Com. on Ins., 29 Am. Bar Ass'n, 557; *South Carolina* v. *Georgia*, 93 U. S. 4; 1 Wilson, Works, 335.

Writers on constitutional law criticise the interpretation of *Paul* v. *Virginia, supra,* except as limited to the facts before the court in that case. Innes, Insurance in its Relation to Commerce &c., 39 Am. Law Rep. 717; Prentice & Egan, The Commerce Clause &c. 46; Report of Com. on Am. Bar Ass'n, 29 Am. Bar Ass'n, 538; 1 Watson, The Constitution, 520–521; 2 Willoughby, The Constitution, §§ 294, 296.

The tax is void. *Hall* v. *De Cuir,* 95 U. S. 485; *Inter. Text Book Co.* v. *Pigg,* 217 U. S. 91; *Robbins* v. *Shelby Taxing Dist.,* 120 U. S. 489.

The laws of Montana prescribe procedure which has been followed here. Section 2742, Revised Codes Mont.

*Mr. D. M. Kelley,* with whom *Mr. Albert J. Galen,* Attorney General of the State of Montana, and *Mr. W. H. Poorman* were on the brief, for defendant in error.

Mr. Justice McKenna delivered the opinion of the court.

Plaintiff in error, called herein plaintiff as it was such in the courts below, brought suit against the defendant in error, herein called defendant, to recover the sum of $209.79, with interest, the amount of taxes paid by plaintiff under protest to defendant.

The tax was levied under a law of the State requiring every insurance corporation or company transacting business in the State to be taxed upon the excess of premiums received over losses and ordinary expenses incurred within the State during the year previous to the year of listing in the county where the agent conducts the business, properly proportioned by the corporation or company at the same rate that all other personal property is taxed. It is provided that the agent shall render the list, and if he refuses, or to make affidavit that the same is correct to the best of his knowledge and belief, the amount may

be assessed to the best knowledge and discretion of the assessor. The corporations and companies are subject to no other tax under the laws of the State except on real estate, and the fees imposed by law.

It was alleged in the complaint that the "tax was and is illegal, unlawful and void for that, said defendant was without jurisdiction to levy or collect said tax, and the levy and collection thereof was and is a burden upon interstate commerce contrary to section 8 of Article I of the Constitution of the United States."

A summary of the allegations of the complaint, which is very long, is as follows:

The plaintiff is a New York corporation, with its home office in New York City, and has transacted and does transact the business of life insurance on a large scale in all of the States of the United States, and with persons residing in every country of the civilized world. It commenced to transact its business with residents of Montana in 1869, and its business has progressively increased until its total insurance in force in that State amounts to $10,023,445, calling for premiums amounting to $343,664.93. This total insurance is made up of policies averaging $2000 each and these are subject to sale, assignment and transfer and are used for collateral security and other commercial purposes and are valuable for such purpose and for other general purposes of trade and commerce.

The company transacts its business through agents, who solicit insurance, collect the first premium and deliver the policy, which is prepared and transmitted from the Home Office to him for such purpose. The company also employs an Agency Director by contract in writing directly with the Home Office through the mails, who supervises the work of soliciting agents and recommends those who desire to become such. The company also employs medical examiners, with specified duties, their employment being negotiated through the mails, and their

reports are made through the mails, and if further information is desired, the Home Office obtains it by correspondence through the mails. It has also a confidential employé called an inspector, whose employment is intended to be secret and who transmits information through the mails. In Butte, in the State of Montana, the company maintains a cashier, appointed from the Home Office, whose authority, however, is limited to making and supervising such records as the business of the office requires, receiving from the soliciting agents and medical examiners applications for new insurance solely for transmission to the Home Office, receiving the reports of the Home Office of its action on such applications, and receiving policies, and the premiums which are paid on the new policies and not transmitted directly to the Home Office, mailing premium notices made out at the Home Office, and sent to him for that purpose; receiving renewal premiums when specially authorized; depositing the amount thereof in bank at Butte to the credit of the company and to be drawn upon by it and not by him; keeping account of the insurance obtained by the soliciting agents and settling with such agents the commission. The company has never had any office or place of business except said office at Butte and one other at Helena, with like duties and authority.

Forms for the use of the several transactions are prepared at the Home Office and transmitted by mail to the company's employés. No agent is authorized to accept risks of any kind or make or modify contracts, nor have they ever done so. The officers of the company reside and have always resided in and near the City of New York and had and have their offices and places of business at the Home Office. All risks are accepted and contracts made, modified and discharged at the Home Office.

The manner of taking applications for insurance and the final issue of policies is alleged, which shows that the

ultimate judgment of their character and acceptance is reserved for the Home Office. The manner of paying premiums is alleged to be either directly to the Home Office through the mails, or to the cashier of the company at its office in Butte, and that the several policies provide for advances and that the company has outstanding advances or loans to its policy holders in the State aggregating the sum of $432,878. The loan is made by transmitting an application to the Home Office, where it is considered and acted upon, and, if accepted, a loan agreement is transmitted to the applicant, who, after executing it, returns it to the Home Office and the proceeds of the loan forwarded by mail to the policy-holder by the company's check on its bank account in New York. And the use of the mails is alleged in payment of premiums and proofs of death.

On account of this manner of doing business it is alleged, on information and belief, to be interstate commerce and within the meaning of the Commerce Clause of the Constitution of the United States.

The laws of the State by virtue of which the tax was imposed are set out. They finally became § 4073 of the Revised Codes, 1907.

The company did not have any property within Deer Lodge County at any time during the year 1910. It paid without protesting the tax imposed by § 4017 of the Revised Codes for the year 1909, amounting to $3,496.85. It also, during said year, paid to the State licenses and fees aggregating the sum of $234. In 1909 it received from policy-holders residing in the County, premiums aggregating the sum of $14,233.41. Its losses and expenses amounted to the sum of $8,888.41. The excess of premiums over losses for said year was the sum of $5,345, upon which there was imposed the sum sued for. The company paid the tax under protest.

A demurrer was sustained to the complaint and a

judgment entered dismissing the action. It was sustained by the Supreme Court of the State.

The same contention is made here as in the state courts, that is, that the tax is a burden on interstate commerce, and an elaborate argument is presented to distinguish this case from those in which this court has decided that insurance is not commerce. These cases are: *Paul* v. *Virginia*, 8 Wall. 168 (1868); *Ducat* v. *Chicago*, 10 Wall. 410; *Liverpool Ins. Co.* v. *Massachusetts*, 10 Wall. 566; *Philadelphia Fire Ass'n* v. *New York*, 119 U. S. 110; *Hooper* v. *California*, 155 U. S. 648; *Noble* v. *Mitchell*, 164 U. S. 367; *New York Life Ins. Co.* v. *Cravens*, 178 U. S. 389; and *Nutting* v. *Massachusetts*, 183 U. S. 553.

If we consider these cases numerically, the deliberation of their reasoning, and the time they cover, they constitute a formidable body of authority and strongly invoke the sanction of the rule of *stare decisis*. This we especially emphasize, for all of the cases concerned, as the case at bar does, the validity of state legislation, and under varying circumstances the same principle was applied in all of them. For over forty-five years they have been the legal justification for such legislation. To reverse the cases, therefore, would require us to promulgate a new rule of constitutional inhibition upon the States and which would compel a change of their policy and a readjustment of their laws. Such result necessarily urges against a change of decision. In deference, however, to the earnestness of counsel, we will consider more particularly (1) what the cases decide, and (2) whether they are wrong in principle.

*Paul* v. *Virginia* is the progenitor case. A law of Virginia precluded any insurance company not incorporated under the laws of the State doing business in the State without previously obtaining a license for that purpose, which could only be obtained by a deposit with the state treasury of bonds of a specified character to an amount varying from thirty to fifty thousand dollars. A

subsequent law required the agent of a foreign insurance company to take out a license.

Paul was appointed the agent of several fire insurance companies incorporated in the State of New York. He applied for a license, offering to comply with all the provisions of the law excepting the deposit of bonds. The license was refused and he, notwithstanding, undertook to act as agent for the companies, offered to issue policies in their behalf and in one instance did issue a policy in their name to a citizen of Virginia. For this violation of the statute he was indicted and convicted in one of the state courts and the judgment was affirmed by the Supreme Court of Appeals of the State. Error was prosecuted from this court based on, as one of its grounds, the alleged violation of the commerce clause of the Constitution of the United States.

Replying to the argument to sustain the contention, the court said, by Mr. Justice Field, that its defect lay in the character of the business done. "Issuing a policy of insurance is not a transaction of commerce. The policies are simple contracts of indemnity against loss by fire, entered into between the corporations and the assured, for a consideration paid by the latter. These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one State to another, and then put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration. Such contracts are not interstate transactions, though the parties may be domiciled in different States. The policies do not take effect—are not executed contracts—until delivered by the agent in Virginia. They are, then, local transactions, and are governed by the local law. They do

not constitute a part of the commerce between the States any more than a contract for the purchase and sale of goods in Virginia by a citizen of New York whilst in Virginia would constitute a portion of such commerce."

The doctrine announced, that insurance was not commerce but a personal contract, was emphasized by illustrations. *Nathan* v. *Louisiana*, 8 How. 73, was cited, where a tax on money and exchange brokers who dealt in the purchase and sale of foreign bills of exchange was sustained as not conflicting with the constitutional power of Congress to regulate commerce. The individual thus using his money, it was said (quoting the cited case), "is not engaged in commerce, but in supplying an instrument of commerce. He is less connected with it than the ship-builder, without whose labor foreign commerce could not be carried on." The doctrine was further illustrated by bills of exchange foreign and domestic, which it was said were subject to the regulating and taxing laws of the States. And it was pointed out that the Federal Government taxed not only foreign bills but domestic bills and promissory notes, whether issued by individuals or banks, a power the Government could not have, it was said, if bills and notes were commerce. It was finally said: "If foreign bills of exchange may thus be the subject of state regulation, much more so may contracts of insurance against loss by fire."

We have taken the trouble to make this long excerpt from the opinion because, as we have said, the case is the primary one and because its argument is really exhaustive of the general principle. We shall consider presently whether there is anything in the case at bar which takes it out of the principle.

In *Ducat* v. *Chicago*, a law of Illinois came up for review. It was a regulation of insurance companies not incorporated by the State, and required their agents to be licensed upon the performance of certain conditions.

Subsequently by the act incorporating Chicago the legislature imposed on all foreign insurance a tax of $2 upon the $100 and at that rate upon the amount of all premiums which should be received. It was made unlawful for any company to transact business until the payment was made. The State Supreme Court sustained the tax and this court affirmed its action, resting the decision on *Paul* v. *Virginia,* the reasoning of which, it was said, it was not necessary to repeat.

*Liverpool Ins. Co.* v. *Massachusetts.* The subject came up again for consideration in passing upon a statute of Massachusetts which levied a tax upon all premiums charged or received by any fire, marine and fire and marine insurance company not incorporated under the laws of the State. The law was sustained. It was said: "The case of *Paul* v. *Virginia* decided that the business of insurance, as ordinarily conducted, was not commerce, and that a corporation of one State, having an agency by which it conducted that business in another State, was not engaged in commerce between the States."

*Philadelphia Fire Ass'n* v. *New York.* A statute of New York imposing taxes and conditions upon insurance companies of other States was considered and sustained. *Paul* v. *Virginia* was cited for the view that "issuing a policy of insurance is not a transaction of commerce."

We may say here that *Paul* v. *Virginia* was also cited for the proposition that the right of a foreign corporation to do business in a State other than that of its creation depends wholly upon the will of such other State. This proposition, it was said, was sustained by previous cases and it has been sustained by many subsequent cases. Necessarily it could not be applied to foreign insurance companies if the business of insurance is commerce. In other words, that right exists and has only an exception, as was said in *Hooper* v. *California,* 155 U. S. 648, "where a corporation created by one State rests its right to enter

another and to engage in business therein upon the Federal nature of its business." And that was the contention in *Hooper* v. *California,* asserting the invalidity of the statute of the State making it a misdemeanor for any person in that State to procure insurance for a resident in the State from an insurance company not incorporated under its laws. The argument was that in as much as the contract involved was one for marine insurance, it was a matter of interstate commerce, and as such beyond the reach of state authority and included among the exceptions to the rule. It was replied by the court: "This proposition involves an erroneous conception of what constitutes interstate commerce. That the business of insurance does not generically appertain to such commerce has been settled since the case of *Paul* v. *Virginia.*" To the attempt to distinguish between policies of marine insurance and policies of fire insurance, and thus take the former out of the rule of *Paul* v. *Virginia,* it was answered, "It ignores the real distinction upon which the general rule and its exceptions are based, and which consists in the difference between interstate commerce or an instrumentality thereof on the one side and the mere incidents which may attend the carrying on of such commerce on the other." And it was pointed out that if the power to regulate interstate commerce applied to all of the incidents of such commerce and "to all contracts which might be made in the course of its transaction, that power would embrace the entire sphere of mercantile activity in any way connected with trade between the States; and would exclude state control over many contracts purely domestic in their nature." And then, sweeping away the distinction between the different subject-matters of insurance contracts, and the different events indemnified against, and declaring the principle applicable to all and determinative of the regulating power of the States over all, it was said, "The business of insurance is not commerce.

The contract of insurance is not an instrumentality of commerce. The making of such a contract is a mere incident of commercial intercourse, and in this respect there is no difference whatever between insurance against fire and insurance against 'the perils of the sea.'"

This declaration was repeated and applied in *Noble* v. *Mitchell*, 164 U. S. 367, and in *New York Life Insurance Co.* v. *Cravens*, 178 U. S. 389. The latter case has special application, for the plaintiff in error here was the plaintiff in error there and the case concerned life insurance companies and their policies. In that case it was contended that a policy of mutual life insurance was an interstate contract and the parties might choose its "applicatory law." The contention was made in many ways and with great amplitude of argument and illustration. It was urged that on account of the mutual character of the company it was the administrator of a fund collected from its policy-holders in different States and countries for their benefit. And the extent of the business was displayed by a stipulation of the parties as follows: "That during the year 1886 and prior to the issuance of the policy sued upon, the amount of policies issued by defendant to citizens of Missouri was $1,617,985.00, and the amount of insurance in force on the lives of citizens of Missouri on December 31st, 1886, was $8,886,542.00, and the total amount of policies issued by defendant in said year 1886 was $85,178,294.00, and the total amount of policies in force on December 31st, 1886, issued by defendant was $304,373,540.00."

It was also urged that modern life insurance had taken on essentially a national and international character, and that when *Paul* v. *Virginia* was decided the business was "to a great extent, local, that is, conducted through the domestic contracts by stock companies. The great and commanding organizations of the present day had hardly begun the amazing development which has made them

the greatest associations of administrative trusts in the business world."

These contentions were earnestly made; the reply to them deliberately meditated and its extent fully appreciated. The ruling in *Paul* v. *Virginia* and other cases was applied. We omitted the reasoning by which they demonstrated, we said, the correctness of their conclusion. We, however, repeated that "the business of insurance is not commerce. The contract of insurance is not an instrumentality of commerce. The making of such a contract is a mere incident of commercial intercourse, and in this respect there is no difference whatever between insurance against fire and insurance against the 'perils of the sea,'" and, we added, "or against the uncertainty of man's mortality."

In *Nutting* v. *Massachusetts* a statute of the State was sustained which required a licensing of the agent of a foreign insurance company not admitted to do business in the State and·made it a crime to solicit insurance of a resident in violation of the statute. The principle of the prior cases which we have referred to was affirmed.

This detail shows what the cases decided. Were they rightly decided? The reasoning of the cases anticipate and answer the question, and it would rack ingenuity to attempt to vary its expression or more aptly illustrate it. A policy of insurance, the cases declare, is a personal contract, a mere indemnity, for a consideration, against the happening of some contingent event, which may bring detriment to life or property, and its character is the same no matter what the event insured against, whether fire or hurricane, acts of man or acts of God, storms on land or storms on sea, death or lesser accident. The same event may involve both life and property, precipitating the obligation of the policies. Nor does the character of the contracts change by their numbers or the residence of the parties. The latter is made much of in this case. It

was made much of in the *Cravens Case.* The effort has
been to give a special locality to the contracts and deter-
mine their applicatory law, and, indeed, to a centralization
of control, to employ local agents but to limit their power
and judgment.   To accomplish the purpose there is
necessarily a great and frequent use of the mails, and this is
elaborately dwelt on by the insurance company in its
pleading and argument, it being contended that this and
the transmission of premiums and the amounts of the
policies constitute a 'current of commerce among the
States.'   This use of the mails is necessary, it may be, to
the centralization of the control and supervision of the
details of the business; it is not essential to its character.
And we may say, in passing, that such effort has led to
regulating legislation, but that it cannot determine its
validity, was decided in the *Cravens Case.*   See also
*Equitable Life Society* v. *Clements,* 140 U. S. 226.

This legislation is in effect attacked by the contention of
the insurance company.   We have already pointed out
that if insurance is commerce and becomes interstate
commerce whenever it is between citizens of different
States, then all control over it is taken from the States
and the legislative regulations which this court has
heretofore sustained must be declared invalid.

The number of transactions do not give the business
any other character than magnitude.   If it did, the
department store which deals with every article which
covers or adorns the human body, or, it may be, nourishes
it, would have one character while its neighbor, humble
in the variety and extent of its stock, would have another.
Nor, again, does the use of the mails determine anything.
Certainly not that which takes place before and after the
transaction between the plaintiff and its agents in secret
or in regulation of their relations.   But put agents to one
side and suppose the insurance company and the applicant
negotiating or consummating a contract.   That they may

live in different States and hence use the mails for their communications does not give character to what they do; cannot make a personal contract the transportation of commodities from one State to another, to paraphrase *Paul* v. *Virginia.* Such might be incidents of a sale of real estate (certainly nothing can be more immobile). Its transfer may be negotiated through the mails and completed by the transmission of the consideration and the instrument of transfer also through the mails.

It is contended that the policies are subject to sale and transfer, may be used for collateral security and other commercial purposes. This may be, but this use of them is after their creation, a use by the insured, not by the insurer. The quality that is thus ascribed to them may be ascribed to any instrument evidencing a valuable right. The argument was anticipated in *Paul* v. *Virginia,* citing *Nathan* v. *Louisiana,* where, as we have seen, a tax on money and exchange brokers who dealt in the purchase and sale of foreign bills of exchange was sustained as not conflicting with the constitutional power of Congress to regulate commerce among the States or with foreign nations.

It is contended that *Paul* v. *Virginia* and the cases which follow it must be limited, as it is contended "the facts therein did limit them; to intrastate, not interstate, contracts," and that if they be not so limited the *Lottery Case,* 188 U. S. 321, and *International Textbook Co.* v. *Pigg,* 217 U. S. 91, cannot stand.

The basis of this contention necessarily is the insistence that the contracts in *Paul* v. *Virginia* and the succeeding cases were intrastate contracts while the contracts in the case at bar are interstate contracts. But this is a false characterization of the contracts. The decision of the cases is that contracts of insurance are not commerce at all, neither state nor interstate. This is the obstacle to the contention of the insurance company. The com-

pany realizes it to be an obstacle and has attempted to remove it by detailing the manner of conducting its business as demonstrating that its policies are interstate contracts. We have replied to the attempt and shown that its manner of business has no such effect. It follows necessarily, therefore, that neither the *Lottery Case* nor the *Pigg Case* impugns the authority or the application of the cited cases. They, the *Lottery Case* and the *Pigg Case*, were concerned with transactions which involved the transportation of property and were not mere personal contracts.

There are cognate cases to the cited cases, of contracts incident to commerce but not of themselves commerce. In *Williams* v. *Fears*, 179 U. S. 270, there was levied by the State of Georgia a tax upon each emigrant agent or employer or employé of such agent, doing business in the State. The law imposing the tax was attacked as a violation of the Commerce Clause of the Constitution of the United States. Commerce was defined, quoting Mr. Justice Field, in *Mobile County* v. *Kimball*, 102 U. S. 691, 702, to "consist in intercourse and traffic, including in these terms navigation and the transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities." The court considered the definition comprehensive enough for the purpose of the case and, testing its application, said, by Mr. Chief Justice Fuller: "These agents were engaged in hiring laborers in Georgia to be employed beyond the limits of the State. Of course, transportation must eventually take place as the result of such contracts, but it does not follow that the emigrant agent was engaged in transportation." The conclusion was supported by cases, among others, *Paul* v. *Virginia* and *Hooper* v. *California*. On the authority of the same cases and *Life Insurance Co.* v. *Cravens*, in *Ware & Leland* v. *Mobile County*, 209 U. S. 405, it was held that contracts by brokers for the sale of

cotton for future delivery, where the transactions were closed by contracts completed and executed in one State although the orders were received from another State, were legally subject to a tax. Such contracts, it was said, were not "the subjects of interstate commerce, any more than in the insurance cases, where the policies are ordered and delivered in another State than that of the residence and office of the company."

In *Engel* v. *O'Malley*, 219 U. S. 128, a law of New York forbade individuals or partnerships to engage in the business of receiving deposits of money for safe keeping or for the purpose of transmission to another, or for any other purpose, without a license from the Comptroller. It was attacked as a violation of the Commerce Clause of the Constitution. The case was decided to be similar in principle to *Ware & Leland* v. *Mobile County* and *Williams* v. *Fears*, and the law was sustained.

Further discussion, we think, is unnecessary, and we have gone beyond the citing of the authoritative cases only in deference to the able and earnest argument of counsel.

*Judgment affirmed.*


MR. JUSTICE HUGHES and MR. JUSTICE VAN DEVANTER dissent.