UNITED STATES v. SOUTH–EASTERN
UNDERWRITERS ASS'N et al.
Criminal Action No. 16920.

District Court, N. D. Georgia,
Atlanta Division.

Aug. 5, 1943.

Frank H. Elmore, Jr., Sp. Asst. to Atty. Gen., Manuel M. Gorman and H. Donald Leatherwood, Sp. Attys., both of Washington, D. C., Tom C. Clark, Asst. Atty. Gen., and M. Neil Andrews, U. S. Atty., and Ellis Mundy, Asst. U. S. Atty., both of Atlanta, Ga., for plaintiff.

Wright, Gordon, Zachry, Parlin & Cahill, of New York City, and MacDougald, Troutman & Arkwright, of Atlanta, Ga. (John T. Cahill, of New York City, Dan MacDougald, of Atlanta, Ga., and Thurlow M. Gordon and E. L. Williams, both of New York City, of counsel), for all defendants except Universal Ins. Co., and Kansas City Fire & Marine Ins. Co.

UNDERWOOD, District Judge.

On November 20, 1942, an indictment was returned by a Grand Jury of this Court against one hundred and ninety-eight corporations and twenty-seven individuals, charging such corporations and individuals with a conspiracy to fix and maintain arbitrary and non-competitive rates on fire insurance sold by them in the States of Alabama, Florida, Georgia, North Carolina, South Carolina, and Virginia, in violation of Section 1 of the Sherman Anti-Trust Act, 26 Stat. 209, 15 U.S.C.A. §§ 1–7, 15 note, and with a conspiracy to monopolize trade and commerce in fire insurance in said States in violation of Section 2 of the Act.

On January 13, 1943, defendants filed a demurrer challenging the sufficiency of the indictment upon the grounds that, it charges no offense against the United States; that the business of fire insurance is not commerce; that the interpretation of the Act insisted upon would be a violation of the Tenth, Fifth and Sixth Amendments to the Constitution; and that the Court is without jurisdiction of the subject matter of the indictment.

The case came on regularly to be heard on the demurrer and was argued orally and subsequently by briefs.

To constitute a violation of the Sherman Act, the restraint and monopoly denounced must be that of interstate trade or commerce, and, unless the restraint and monopoly charged in the indictment be restraint or monopoly of interstate trade or commerce, the indictment must fall.

It is not a question here of whether the defendants participated in some incidental way in interstate commerce or used in some instances the facilities of interstate commerce, but is rather whether the activities complained of as constituting the business of insurance would themselves constitute interstate trade or commerce, and whether defendants' method of conducting same amounted to restraint or monopoly of same. It is not a question as to whether or not Congress had power to regulate the insurance companies or some phases of their activities, but rather whether Congress did do so by the Sherman Act.

Persons may be engaged in interstate commerce, yet, if the restraint or monopoly complained of is not itself a restraint or monopoly of interstate trade or commerce, they may not be convicted of violation of the Sherman Act. The fact that they may use the mails and instrumentalities of interstate commerce and communication, and be subject to Federal regulations relating thereto, would not make applicable the Sherman Act to intrastate commerce or to activities which were not commerce at all.

The whole case, therefore, depends upon the question as to whether or not the business of insurance is interstate trade or commerce, and if so, whether the transactions alleged in the indictment constitute interstate commerce.

The Supreme Court has repeatedly held, during a period of seventy-five years, that the business of insurance is not commerce, either intrastate or interstate. They have done so unequivocally and unambiguously. Paul v. Virginia, 8 Wall. 168, 19 L.Ed. 357; Hooper v. California, 155 U.S. 648, 15 S.Ct. 207, 39 L.Ed. 297; Noble v. Mitchell, 164 U.S. 367, 17 S.Ct. 110, 41 L.Ed. 472; New York Life Insurance Co. v. Cravens, 178 U.S. 389, 20 S.Ct. 962, 44 L.Ed. 1116; New York Life Insurance Co. v. Deer Lodge County, 231 U.S. 495, 34 S.Ct. 167, 58 L.Ed. 332; Bothwell v. Buckbee-Mears Co., 275 U.S. 274, 48 S.Ct. 124, 72 L.Ed. 277; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 253, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944.

This is not denied by the Government, but it maintains that in some of the cases the ruling was obiter and in others based upon a misconception and failure to comprehend the sweeping scope of the fire insurance business. (Government's Brief, pages 8 & 9). Neither of these positions is sound. In all of the above cited cases, the ruling was essential to the case and the reasoning of the Court showed most careful analysis and full consideration of the questions now raised and did not merely follow "without reconsideration or reason, the fallacy established in the dictum of Paul v. Virginia." (Government's Brief, page 15).

This is especially true in the elaborately argued and thoroughly considered case of New York Life Insurance Co. v. Deer Lodge County, supra.

The Court could not be clearer in its announcement than in the expressions, "The business of insurance is not commerce. The contract of insurance is not an instrumentality of commerce." (Hooper v. California, 155 U.S. 648, 655, 15 S.Ct. 207, 210, 39 L.Ed. 297); and, "Contracts of insurance are not commerce at all, neither state nor interstate" (New York Life Insurance Co. v. Deer Lodge County, 231 U.S. 495, 510, 34 S.Ct. 167, 172, 58 L.Ed. 332).

■ The same reasoning applies to the word "trade" as used in Sections 1 and 2 of the Sherman Act. It has a different significance in Section 3, but this fact does not enlarge its meaning in Sections 1 and 2. "Section 1 having been passed under the specific power to regulate commerce, its meaning necessarily must be limited by the scope of that power; and it may be that the words 'trade' and 'commerce' are there to be regarded as synonymous. On the other hand, section 3, so far as it relates exclusively to the District of Columbia, could not have been passed under the power to regulate interstate or foreign commerce, since that provision of the section deals not with such commerce but with restraint of trade purely local in character." Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 434, 52 S.Ct. 607, 609, 76 L.Ed. 1204.

This difference in the meaning of the word "trade" as used in the different sections of the Act is referred to and emphasized in the later cases of Associated Press v. Labor Board, 301 U.S. 103, 57 S.Ct. 650, 81 L.Ed. 953; Apex Hosiery

Company v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311, 128 A.L.R. 1044; and American Medical Association v. United States, 317 U.S. 519, 63 S.Ct. 326, 87 L.Ed. ——.

■ Under the extremely broad construction of the words "interstate commerce" by the Supreme Court, which has been so ably presented by counsel for the Government, it is difficult to conceive how the business of insurance could be interstate trade and yet not be interstate commerce. At any rate, the finding by the Supreme Court that the business of insurance is not commerce, seems to me to demand a finding that the business of insurance is not "interstate trade" and is not covered by the Sherman Act.

■ In the case of Apex Hosiery Co. v. Leader, 310 U.S. 469, on page 495, 60 S.Ct. 982, at page 993, 84 L.Ed. 1311, 128 A.L.R. 1044, the Court say: "The addition of the words 'or commerce among the several States' was not an additional kind of restraint to be prohibited by the Sherman Act but was the means used to relate the prohibited restraint of trade to interstate commerce for constitutional purposes, Atlantic Cleaners & Dyers v. United States, 286 U.S. 427, 434, 52 S.Ct. 607, 609, 76 L.Ed. 1204, so that Congress, through its commerce power, might suppress and penalize restraints on the competitive system which involved or affected interstate commerce."

■■ The business of insurance is not interstate commerce or interstate trade, though it might be considered a trade subject to local laws, either State or Federal, where the commerce clause is not the authority relied upon. But where the exercise of power is under the commerce clause alone, as in cases under the Sherman Act, the "trade" must have reference to transactions in or which affect interstate commerce.

"This Court has since repeatedly recognized that the restraints at which the Sherman law is aimed, and which are described by its terms, are only those which are comparable to restraints deemed illegal at common law, although accomplished by means other than contract and which, for constitutional reasons, are confined to transactions in or which affect interstate commerce." Apex Hosiery Co. v. Leader, 310 U.S. 469, 498, 60 S.Ct. 982, 995, 84 L.Ed. 1311, 128 A.L.R. 1044.

Here the "trade" pursued, if it be such, is that of conducting the business of in-

surance, which the Supreme Court has held to be local and not interstate in character.

Counsel for the Government concede that in the numerous decisions cited the Supreme Court has held that the business of insurance is not commerce, yet, strangely enough, ask this Court to rule directly to the contrary. Of course the Supreme Court decisions must be followed by this Court. The indictment does not disclose any facts or differences in this case which would remove it from the controlling effect of the decisions of the Supreme Court holding that the business of insurance is not commerce.

If there is to be any overruling of the long line of clear and thoroughly considered decisions of the Supreme Court, acquiesced in for seventy-five years by Congress and administrative agencies, it will have to be done by the Supreme Court itself, or by Congress.

The conspiracies charged in the indictment are not conspiracies in restraint of or to monopolize interstate trade or commerce. The indictment, therefore, does not charge Federal offenses and should be dismissed.

An order will be passed to accompany this opinion, sustaining the demurrer on Grounds 1, 2 and 5 thereof, and dismissing the indictment.