**M. MEADS**

v.

**UNITED STATES.**

No. 422-52.

United States Court of Claims

Dec. 4, 1957.

M. Meads, pro se.

Kendall M. Barnes, Washington, D. C., George Cochran Doub, Asst. Atty. Gen., Ernest R. Charvat, Washington, D. C., on the briefs, for defendant.

WHITAKER, Judge.

The Foreign Liquidation Commissioner, through the Field Commissioner, Philippines and Western Pacific Area, entered into a contract of sale to plaintiff of a portable sawmill for the sum of $1,405.65, which plaintiff paid. When plaintiff called for the sawmill, defendant failed to produce it. Defendant contends that four sawmills had been declared surplus, but that actually there were only three in stock, and these had been disposed of before plaintiff's contract was entered into. It says, therefore, that the Foreign Liquidation Commissioner contracted to sell something he did not have. Defendant offered to return plaintiff's money, but the offer was declined.

Plaintiff sues for breach of contract, claiming truly fantastic damages, $4,216,852.25, for the use of a $1,400 sawmill, from September 1, 1946 to July 31, 1952, plus interest of $1,072,117.75, and just compensation and interest from August 1, 1952 to date of judgment of $3,020,050.00, a total of over $8,000,000. The measure of damages is, of course, the difference between the contract price and the market value of the thing sold, a matter of a few hundred dollars.

But defendant says there is no liability at all, because the extent of the authority of the Foreign Liquidation Commissioner was to sell such surplus property as actually existed, and that he had no authority to sell property that did not exist. It cites three opinions of this court in sup-

port of its position. They are Schwarzenberg v. United States, 60 Ct.Cl. 898, 902; Srere Bros. & Co. v. United States, 60 Ct.Cl. 994, 998; and Condenser Service & Engineering Co. v. United States, 126 Ct.Cl. 186, 193. The first two opinions and the majority opinion in the third do support the defendant's position. It is also supported by Hummel v. United States, 58 Ct.Cl. 489, 493.

The writer of this opinion has some misgivings about the correctness of the holdings in these cases, but the cases of Schwarzenberg, Srere Bros. and Hummel are of long standing and have only recently been approved in Condenser Service & Engineering Co., supra.

Much has been done in modern times to weaken the doctrine of *stare decisis*. Formerly, however, it was much respected. The Supreme Court in New York Life Insurance Company v. Deer Lodge County, 231 U.S. 495, at page 502, 34 S.Ct. 167, at page 169, 58 L.Ed. 332, said:

"If we consider these cases numerically, the deliberation of their reasoning, and the time they cover, they constitute a formidable body of authority and strongly invoke the sanction of the rule of *stare decisis*. This we especially emphasize, for all of the cases concerned, as the case at bar does, the validity of state legislation, and under varying circumstances the same principle was applied in all of them. For over forty-five years they have been the legal justification for such legislation. To reverse the cases, therefore, would require us to promulgate a new rule of constitutional inhibition upon the states, and which would compel a change of their policy and a readjustment of their laws. Such result necessarily urges against a change of decision. * * *"

Broom in his Legal Maxims, 7th ed. 147, thus states the rule,

"* * * to abide by former precedents, *stare decisis*, where the same points come again in litigation, as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion, as also because, the law in that case being solemnly declared and determined, what before was uncertain, and perhaps indifferent, is now become a permanent rule, which it is not in the breast of any subsequent judge to alter or swerve from according to his private sentiments; he being sworn to determine, not according to his own private judgment, but according to the known laws and customs of the land—not delegated to pronounce a new law, but to maintain and expound the old one—*jus dicere et non jus dare*."

■ Notwithstanding the modern trend, we believe the doctrine to be a salutary one, which should be adhered to in the absence of cogent countervailing considerations. The law is by no means an exact science, but insofar as can be attained, the rights of parties should be clearly defined, and once having been clearly defined, they should be respected. Parties should not be deprived of rights, established by prior judicial decision and relied upon when the transaction was entered into, by a change in the interpretation of the law, pronounced after the transaction.

■ When the Foreign Liquidation Commissioner and the plaintiff entered into their contract, they did so on the faith of the Schwarzenberg, Srere Bros. and Hummel cases. Those cases hold that if the property which the Foreign Liquidator contracts to sell is in fact nonexistent, in other words, if the Foreign Liquidator contracted to sell something which he believed he had, but had not, the contract is void and of no effect, because beyond the power conferred by law on the Foreign Liquidation Commissioner. He contracted with plaintiff on this assumption. Plaintiff is charged with knowledge of the fact that the Liquidator was under no liability if it turned out that he did not actually have the property which he contracted to sell.

That being the law at the time of the transaction, plaintiff is not entitled to recover damages for breach of contract, if in fact the sawmill was nonexistent at the time the contract was entered into.

■ The contract in this case was a typewritten document, not a printed nor a mimeographed form. It contained a clause evidently taken from a standard form of contract and not strictly applicable to this particular transaction, but which nevertheless states what was in the minds of the parties in case of an inability to deliver what the contract of sale called for. This is article 8, headed, "Adjustment for variation in quantity." It reads:

> "Unless otherwise specified, the quantities of the various items listed are approximate only. Any variations between the quantity stated and any item sold on a per item basis and the quantity of such item actually delivered to the buyer will be adjusted on the basis of the unit price quoted for such item or items."

Where several items are contracted to be sold and it develops that the Foreign Liquidator has not as many items as he thought he had, then his obligation to the buyer is to return to the buyer the price paid for any items missing. While this article of the contract had reference to the sale of more than one item, nevertheless it demonstrates that the parties had in mind that if the Liquidator was mistaken about having on hand the things which he contracted to sell, then the extent of his obligation to the buyer on account of this mistake was to return to him the amount he had paid for the missing items. So, even though but one item was sold, nevertheless if the Foreign Liquidator was mistaken about having such an item in his possession, then the extent of his obligation to the buyer was to return to him the price he had paid for the missing article.

When we take this article of the contract into consideration in connection with prior decisions of this court, we are persuaded that justice would be satisfied by rendering judgment in plaintiff's favor for the amount paid for the missing item, if at the time of the contract in sale defendant had on hand no sawmill which it could have delivered to plaintiff.

■ The evidence indicates that four sawmills were declared surplus, and that before the contract of sale to plaintiff was entered into defendant had disposed of one of them, that two others had been withdrawn for military use, and that defendant was mistaken about having the fourth one. However, the proof is not clear on this point.

If at the time defendant entered into the contract with plaintiff it then had on hand a sawmill which it could have delivered to plaintiff, and if later it disposed of it to another, we are of opinion that the defendant would be liable to plaintiff for the difference in the sales price and the market value of the sawmill at the time of the sale.

Because there is an issue as to this fact, which has not been clarified by the documents filed, we must overrule defendant's motion for summary judgment, as well as plaintiff's but leave is granted to the parties to renew their motions and support them, if they can, by other affidavits or other documents, to show whether or not defendant actually had a sawmill on hand at the time of the contract with plaintiff which it could have then delivered to him.

Plaintiff's and defendant's motions for summary judgment are overruled.

It is so ordered.

JONES, Chief Judge, and MADDEN and LITTLETON, Judges, concur.

LARAMORE, Judge, took no part in the consideration and decision of this case.