TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00354-CV







Dow Chemical Company, Appellant


v.



Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas; and

John Cornyn, Attorney General of the State of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 99-05725, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







 Appellant Dow Chemical Company ("Dow") appeals from the district court's
summary judgment in favor of appellees, Carole Keeton Rylander, Comptroller of Public Accounts
of the State of Texas, and John Cornyn, Attorney General of the State of Texas, denying Dow a
refund of taxes previously paid.(1) Dow also appeals the district court's denial of its own motion
for summary judgment. We will reverse the district court's summary judgment and render
judgment granting Dow's motion for summary judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 Dow is a Delaware corporation headquartered in Michigan and authorized to do
business in Texas. See Tex. Bus. Corp. Act Ann. art. 8.05 (West Supp. 2001). Dow owns real
and personal property in Texas. Although the property is located in Texas, Dow insures it
through out-of-state insurance companies. These insurance companies are not authorized to sell
insurance in Texas. Texas terms such insurance--covering Texas risks but purchased from out-of-state insurance companies--"independently procured insurance" and imposes a tax on it. See Tex.
Ins. Code Ann. §§ 101.252, .053(b)(4) (West Supp. 2001). Dow is required to file reports with
and pay the tax to the Comptroller. See id. § 101.252(a). 

 The Comptroller audited Dow for the period January 1, 1991 through December
31, 1997. See Tex. Tax Code Ann. § 111.004 (West 1992). As a result of the audit, the
Comptroller assessed Dow $427,148.80 for independently procured insurance taxes, penalties, and
interest. See Tex. Ins. Code Ann. § 101.252. Dow paid the assessment under protest and filed
this suit in district court seeking a refund of its payment. See Tex. Tax Code Ann. § 112.151
(West Supp. 2001); Tex. Gov't Code Ann. §§ 403.201-.204 (West 1998). The parties submitted
competing motions for summary judgment. The district court granted summary judgment in favor
of the Comptroller and denied Dow's motion. By one issue, Dow appeals, asserting that the
district court erred in granting the Comptroller's motion and denying its motion for summary
judgment.


DISCUSSION

Dow Chemical's Failure to Provide Notice

 The insurance code requires that an insurer or other person who claims an
exemption based on the United States Constitution must file notice of the claim with the
commissioner of insurance before commencing operations. See Act of May 27, 1985, 69th Leg.,
R.S., ch. 918, § 3, 1985 Tex. Gen. Laws 3088, 3090 (Tex. Ins. Code Ann. art. 1.14-1, § 14,
since repealed and codified at Tex. Ins. Code Ann. § 101.004 (West Supp. 2001)).(2) Initially, the
Comptroller urges, but does not assert as error, that the notice provision applies to Dow because
of the "State's substantial interest in regulating insurance." The Comptroller "raise[s] this issue
only as a defensive matter" and argues that this Court "should consider remanding the case if it
finds this issue controlling." We do not.

 The goal of statutory construction is to give effect to the intent of the legislature. 
Sorokolit v. Rhodes, 889 S.W.2d 239, 241 (Tex. 1994). If language in a statute is unambiguous,
a court must seek the intent of the legislature as found in the plain and common meaning of the
words and terms used. Id.

 Section 101.004(a) of the insurance code states that Texas's independently procured
insurance tax does "not apply to an insurer or other person to whom, under the constitution or
statutes of the United States or the constitution of this state, it may not apply." Tex. Ins. Code
Ann. § 101.004(a) (West Supp. 2001). Section 101.004(b) continues, "Before commencing
operations, an insurer or other person claiming an exemption described by Subsection (a) must file
with the commissioner: (1) notice of the claim; and (2) documents supporting the claim." Id.
§ 101.004(b). Although she states that the phrase "before commencing operations" is "admittedly
obscure," the Comptroller urges us to hold that it is "broad enough to cover Dow's operations." 
However, the language of this section demonstrates that it is not meant to apply in the manner the
Comptroller suggests. A close look at the policy and purpose behind the statute illustrates this
point. The portion of the insurance code to which this section now refers is chapter 101, entitled
"Unauthorized Insurance." Id. § 101.001. Its policy and purpose section states, "It is a state
concern that many residents of this state hold insurance policies issued by persons or insurers who
are not authorized to do insurance business in this state . . . . These residents face often
insurmountable obstacles in asserting legal rights under the policies in foreign forums under
unfamiliar laws and rules of practice." Id. §101.001(a). The section continues that "it is the
policy of this state to protect residents against acts by a person or insurer who is not authorized
to do business in this state." Id. § 101.001(b). Dow is not an insurer, nor has it engaged in
unauthorized insurance business.

 In addition, the notice requirement on which the Comptroller relies was enacted in
1985. See Act of May 27, 1985, 69th Leg., R.S., ch. 918, § 3, 1985 Tex. Gen. Laws 3088, 3090
(Tex. Ins. Code Ann. art. 1.14-1, § 14, since amended). Using the application the Comptroller
urges, Dow would have been required to provide notice before the notice provision was ever
enacted if Dow commenced operations prior to 1985. Such a result does not follow logic. 
Construction of the plain language of statutes must avoid absurd results if the language will allow. 
See Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996 S.W.2d 864, 867 (Tex. 1999). We hold
that the notice requirements of the insurance code do not apply to Dow.

Texas's Independently Procured Insurance Tax

 The parties do not dispute the facts of this case and, in their motions, both assert
a right to summary judgment as a matter of law. Because the propriety of summary judgment in
this case is a question of law, we review the district court's decision de novo. See McCarthy Bros.
Co. v. Continental Lloyds Ins. Co., 7 S.W.3d 725, 728 (Tex. App.--Austin 1999, no pet.);
Rylander v. 3 Beall Bros. 3, Inc., 2 S.W.3d 562, 566 (Tex. App.--Austin 1999, pet. denied).
When both sides move for summary judgment and the trial court grants one motion and denies the
other, we review the summary-judgment proof presented by both sides and determine all questions
presented. Commissioners Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997). If we find error, we
must render the judgment the trial court should have rendered. Id.

 The validity of the tax before us has previously been presented to this Court, the
Texas Supreme Court, and the United States Supreme Court. See State Bd. of Ins. v. Todd
Shipyards Corp., 340 S.W.2d 339 (Tex. Civ. App.--Austin 1960), writ ref'd n.r.e., 343 S.W.2d
241 (Tex. 1961), aff'd, 370 U.S. 451 (1962). Ultimately, the United States Supreme Court held
that Texas's independently procured insurance tax violated federal law, specifically the McCarran-Ferguson Act, 15 U.S.C.A. §§ 1011-15 (West 1997). State Bd. of Ins. v. Todd Shipyards Corp.,
370 U.S. 451 (1962).


A. Todd Shipyards 

 Prior to Congress's passage of the McCarran-Ferguson Act, the Supreme Court 
held that the Due Process Clause dictated that states could not tax the business of insurance. See
Connecticut Gen. Life Ins. Co. v. Johnson, 303 U.S. 77 (1938); St. Louis Cotton Compress Co.
v. Arkansas, 260 U.S. 346 (1922); Allgeyer v. Louisiana, 165 U.S. 578 (1897). The Supreme
Court has summarized these three cases as follows:


The Allgeyer case held that Louisiana by reason of the Due Process Clause of the
Fourteenth Amendment could not make it a misdemeanor to effect insurance on
Louisiana risks with an insurance company not licensed to do business in
Louisiana, where the insured through use of the mails contracted in New York for
the policy. The St. Louis Cotton Compress case held invalid under the Due Process
Clause an Arkansas tax on the premiums paid for a policy on Arkansas risks, made
with an out-of-state company having no office or agents in Arkansas. The
Connecticut General Life Insurance case held invalid under the Due Process Clause
a California tax on premiums paid in Connecticut by one insurance company to
another for reinsurance of life insurance policies written in California on California
residents, even though both insurance companies were authorized to do business
in California.



Todd Shipyards, 370 U.S. at 453-54.

 After its decisions in Connecticut General, St. Louis Cotton Compress, and
Allgeyer, the Supreme Court held that the modern business of insurance was "interstate
commerce."(3) See United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 545-51
(1944). Interstate commerce implicates the Commerce Clause. See id. at 538-39. The Commerce
Clause provides Congress with the "positive power" to regulate such business. Id. at 552-53. In
South-Eastern Underwriters, the Court upheld congressional regulation of insurance. See id. at
562. However, the Court did not hold that the states were necessarily prohibited from continuing
to regulate insurance transactions and practices.(4) See id. at 534-62.

 Then in 1945, Congress passed the McCarran-Ferguson Act. The McCarran-Ferguson Act "provided that the regulation and taxation of insurance should be left to the States,
without restriction by reason of the Commerce Clause." Todd Shipyards, 370 U.S. at 452; see
McCarran-Ferguson Act §§ 1011-15. But the history of the McCarran-Ferguson Act also provides
"an explicit, unequivocal statement that the Act was so designed as not to displace" Connecticut
General, St. Louis Cotton Compress, and Allgeyer. Todd Shipyards, 370 U.S. at 455. In Todd
Shipyards, the Supreme Court held that Texas's independently procured insurance tax violated
McCarran-Ferguson. Curiously, such a holding from the United States Supreme Court has not
dissuaded the Comptroller from levying this tax. But Todd Shipyards controls our analysis today. 
See Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989).


B. The Texas Tax

 Today's question is whether Dow is engaged in the same insurance activities as was
Todd Shipyards. At the time of Todd Shipyards, the independently procured insurance tax statute
was codified in article 21.38 of the insurance code and provided the following:


If any person, firm, association or corporation shall purchase from an insurer not
licensed in the State of Texas a policy of insurance covering risks within this State
in a manner other than through an insurance agent licensed as such under the laws
of the State of Texas, such person, firm, association or corporation shall pay to the
Board a tax of five per cent (5%) of the amount of the gross premiums paid by such
insured for such insurance.



Act of May 14, 1957, 55th Leg., R.S., ch. 395, § 1, 1957 Tex. Gen. Laws 1180, 1181 (Tex. Ins.
Code Ann. art 21.38, § 2(e), since repealed and codified at Tex. Ins. Code Ann. §101.252 (West
Supp. 2001)). In similar terms, the tax at issue in this case is applied as follows:


Every insured who procures insurance in [transactions involving contracts of
insurance independently procured through negotiations occurring entirely outside
of this state which are reported and on which premium tax is paid] must file a
report with the comptroller and pay an independently procured insurance tax of
4.85 percent.



Act of May 27, 1993, 73d Leg., R.S., ch. 999, § 7, 1993 Tex. Gen. Laws 4373, 4373 (Tex. Ins.
Code Ann. art 1.14-1, § 12(a), since repealed and codified at Tex. Ins. Code Ann. § 101.252). 
The statutes are essentially the same, and, with the exception of the rate, they result in the same
tax.

 The factual similarities between Todd Shipyards and Dow are also readily apparent:


In both instances the insurance in question covered property in Texas owned by a
foreign corporation.


All of the insurers are domiciled outside of this state.


All of the insurance agreements made the basis of the tax were contracted for,
signed, issued, delivered, paid for, and accepted out of this state.


None of the insurers has a permit or license from Texas to write insurance in the
state and none of the insurers are subject to examination or subject to any control
by this state.


None of the insurers has an office or agent in Texas.


None of the insurers investigated or adjusted claims within Texas.


None of the insurers ever solicited Todd Shipyards' or Dow's insurance business
or policies within Texas.


None of the insurers communicated with either Todd Shipyards or Dow within the
state.


All decisions relative to the purchase and renewal of insurance, extent and amount
of coverage, the selection of insurers and confirmation of insurance contracts are
made outside of Texas.


Under the policies, all losses are payable out-of-state and all premiums are paid
out-of-state.


 Because the law and the facts at issue today are essentially the same, we hold that
the insurance at issue in Todd Shipyards is virtually identical to the insurance at issue in this case.


Due Process

 The Comptroller urges us to ignore Todd Shipyards and apply a due-process
analysis to the permissibility of a tax on independently procured insurance. The Comptroller
argues that more recent due-process decisions have rejected "the meaningless formalisms of
another era" and superseded Todd Shipyards. The Comptroller continues that "it would be
unreasonable to expect the [Supreme] Court to undertake the daunting clerical task of identifying
all the decisions" superseded by the Court's current line of due-process decisions and formally
overrule them. However, a due-process analysis is unnecessary. We discern no difference
between the tax at issue in Todd Shipyards and the tax challenged today. We must adhere to
precedent in the face of a United States Supreme Court case directly on point. See Rodriguez de
Quijas, 490 U.S. at 484. In Rodriguez de Quijas, the Fifth Circuit Court of Appeals declined to
follow a prior and controlling decision of the Supreme Court, stating that the decision had been
reduced to "obsolescence" by subsequent decisions of the Court. Id. at 479. In reviewing the
court of appeals decision, the Supreme Court stated, "If a precedent of this Court has direct
application to a case, yet appears to rest on reasons rejected in some other line of decisions, the
Court of Appeals should follow the case which directly controls, leaving to this Court the
prerogative of overruling its own decisions." Id. at 484. State courts are no exception; this Court
is bound by Todd Shipyards unless and until the Supreme Court overrules it. See Owens Corning
v. Carter, 997 S.W.2d 560, 571 (Tex.), cert. denied, 528 U.S. 1005 (1999).


CONCLUSION

 We sustain Dow's issue on appeal, reverse the judgment of the district court, and
render judgment for Dow granting its motion for summary judgment.



 

 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Jones;* Justice Jones not participating

Reversed and Rendered

Filed: January 25, 2001

Publish



* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. The interests of the comptroller and the attorney general do not diverge. We will therefore
refer to them jointly as the "Comptroller." 
2. Although the original statute has been repealed and codified, the changes are not
substantive, and we will cite to the current code for convenience.
3. In several prior cases involving challenges to state regulation, the Court had held that the
buying and selling of insurance was not commerce at all. See New York Life Ins. Co. v. Deer
Lodge County, 231 U.S. 495 (1913); Hooper v. California, 155 U.S. 648 (1895); Paul v.
Virginia, 75 U.S. (8 Wall.) 168 (1869).
4. At the time of South-Eastern Underwriters, the Supreme Court had upheld state regulation
of insurance in a number of cases. See Hoopeston Canning Co. v. Cullen, 318 U.S. 313 (1943);
Osborn v. Ozlin, 310 U.S. 53 (1940); New York Life Ins., 231 U.S. 495; Hooper, 155 U.S. 648;
Paul, 75 U.S. (8 Wall.) 168.


in the
state and none of the insurers are subject to examination or subject to any control
by this state.


None of the insurers has an office or agent in Texas.


None of the insurers investigated or adjusted claims within Texas.


None of the insurers ever solicited Todd Shipyards' or Dow's insurance business
or policies within Texas.


None of the insurers communicated with either Todd Shipyards or Dow within the
state.


All decisions relative to the purchase and renewal of insurance, extent and amount
of coverage, the selection of insurers and confirmation of insurance contracts are
made outside of Texas.


Under the policies, all losses are payable out-of-state and all premiums are paid
out-of-state.


 Because the law and the facts at issue today are essentially the same, we hold that
the insurance at issue in Todd Shipyards is virtually identical to the insurance at issue in this case.


Due Process

 The Comptroller urges us to ignore Todd Shipyards and apply a due-process
analysis to the permissibility of a tax on independently procured insurance. The Comptroller
argues that more recent due-process decisions have rejected "the meaningless formalisms of
another era" and superseded Todd Shipyards. The Comptroller continues that "it would be
unreasonable to expect the [Supreme] Court to undertake the daunting clerical task of identifying
all the decisions" superseded by the Court's current line of due-process decisions and formally
overrule them. However, a due-process analysis is unnecessary. We discern no difference
between the tax at issue in Todd Shipyards and the tax challenged today. We must adhere to
precedent in the face of a United States Supreme Court case directly on point. See Rodriguez de
Quijas, 490 U.S. at 484. In Rodriguez de Quijas, the Fifth Circuit Court of Appeals declined to
follow a prior and controlling decision of the Supreme Court, stating that the decision had been
reduced to "obsolescence" by subsequent decisions of the Court. Id. at 479. In reviewing the
court of appeals decision, the Supreme Court stated, "If a precedent of this Court has direct
application to a case, yet appears to rest on reasons rejected in some other line of decisions, the
Court of Appeals should follow the case which directly controls, leaving to this Court the
prerogative of overruling its own decisions." Id. at 484. State courts are no exception; this Court
is bound by Todd Shipyards unless and until the Supreme Court overrules it. See Owens Corning
v. Carter, 997 S.W.2d 560, 571 (Tex.), cert. denied, 528 U.S. 1005 (1999).


CONCLUSION

 We sustain Dow's issue on appeal, reverse the judgment of the district court, and
render judgment for Dow granting its motion for summary judgment.



 

 Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Jones;* Justice Jones not participating

Reversed and Rendered

Filed: January 25, 2001

Publish



* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. The interests of the comptroller and the attorney general do not diverge. We will therefore
refer to them jointly as the "Comptroller." 
2. Although the original statute has been repealed and codified, the changes are not
substantive, and we will cite to the current code for convenience.
3. In several prior cases involving challenges to state regulation, the Court had held that the
buying and selling of insurance was not commerce at all. See New York Life Ins. Co. v. Deer
Lodge County, 231 U.S. 495 (1913); Hooper v. California, 155 U.S. 648 (1895); Paul v.
Virginia, 75 U.S. (8 Wall.) 168 (1869).
4. At the time of South-Eastern Underwriters, the Supreme Court had upheld state regulation
of insurance in a number of cases. See Hoopeston Canning Co. v. Cullen, 318 U.S. 313 (1943);
Osborn v. Ozlin,