85 F.Supp. 961 (1949)
NORTH LITTLE ROCK TRANSPORTATION CO., Inc.
v.
CASUALTY RECIPROCAL EXCHANGE et al.
L. R. Civ. A. No. 1780.
United States District Court E. D. Arkansas, W. D.
September 8, 1949.
*962 Frederick U. Andres, Little Rock, Ark., for plaintiff.
James B. Donovan, New York City and Buzbee, Harrison & Wright (now Wright, Harrison, Lindsey & Upton), of Little Rock, Ark. (James B. Donovan, New York City, and Edward L. Wright, Little Rock, Ark., of counsel), for defendants National Bureau of Casualty Underwriters, et al.
Gannaway & Gannaway, of Little Rock, Ark., for Casualty Reciprocal Exchange.
Ike Murry, Attorney General of the State of Arkansas, and Arnold Adams, Asst. Attorney General, for defendant Herbert Graves, Insurance Commissioner of State of Arkansas.
TRIMBLE, Chief Judge.
1. The jurisdictional facts of diversity of citizenship, amount in controversy and a federal question exist in this action.
2. The plaintiff, a taxicab company, operating in the area of Little Rock, Arkansas, brings this action against the Casualty Reciprocal Exchange, the National Bureau of Casualty Underwriters, and forty-nine casualty insurance companies, all authorized to and doing business in Arkansas.
3. National Bureau of Casualty Underwriters, referred to herein as Bureau, a voluntary, non-profit, unincorporated association of stock companies engaged in writing casualty insurance, is a rating agency. As such it secures and analyzes pertinent data from which it establishes for its members and subscribers, writing rules, risk classifications, policy provisions, forms, manual rates, minimum premiums and rating plans.
4. Membership and subscription to the Bureau is voluntary and the Bureau members and subscribers must comply with its determinations, with two exceptions not pertinent here.
5. The Bureau is licensed and authorized to act as a rating organization for automobile liability insurance by the State of Arkansas, and all of the casualty insurance companies, parties to this action, are members or subscribers of the Bureau, except the Casualty Reciprocal Exchange.
6. From July 24, 1946 to May 16, 1948 plaintiff was insured by defendant Exchange for automobile liability, covering its taxicab operations.
7. Although plaintiff charges that the Exchange during this period paid meritless claims, and made excessive payments in settlement of others, it is admitted that under the terms of the policy the Exchange had complete discretion in the settlement of claims.
8. The permissible loss ratio for such insurance is 64% of premiums, and the losses attributable to claims against the plaintiff during that period amounted to 136.1%.
*963 9. Plaintiff was paying to Exchange ordinary manual rates, based upon the average experience of all insureds, not adjusted because of the particular experience of individual risks.
10. Effective May 16, 1948, Exchange cancelled the policy in accordance with its terms.
11. After seeking insurance elsewhere and being refused, plaintiff applied to the Arkansas Automobile Risk Plan, which was a cooperative undertaking by all insurers licensed to transact such business in Arkansas, and under which each insurer accepts an equitable number of risks, in good faith seeking such insurance, and unable to obtain it. The plan was organized in 1947 pursuant to Act 116 of Acts of Arkansas, 1947, with the approval of the Insurance Commissioner of Arkansas.
12. Under this plan the plaintiff was assigned to defendant Aetna Casualty and Surety Company, (a member of the Bureau), the risk was accepted and policy issued effective May 16, 1948.
13. Aetna accepted an initial premium, did not apply the ordinary manual rates, the final premium to be computed when proper rate-making data became available, and provided that in calculating the proper rate for the risk, consideration would be given to plaintiff's experience.
14. At Aetna's request the Exchange furnished through proper channels information as to the accident experience of plaintiff under the Exchange policies. Although this information was not complete, when received it was furnished to the Bureau, and Aetna requested the Bureau to establish a rate for the risk.
15. Under the submission to the plaintiff of this rate so established, it complained to the Arkansas Insurance Department. The Department, at plaintiff's request, obtained from Exchange and sent to Bureau, all other obtainable information on plaintiff's experience under the Exchange policies.
16. On the basis of the completed information, Bureau recalculated the rate for the risk in accordance with the rating plan on file with the Department. The source from which the information came was not determinative of the rate and the rate would have been the same regardless of source of information.
17. Demand for payment of the established rate was made on July 29, 1948, with cancellation of the policy as the alternative, and the full sum was paid on July 31, 1948.
18. While members and subscribers to Bureau write 56% of all automobile liability insurance written in Arkansas, there are insurance carriers writing such insurance which are members of another licensed bureau, and insurers not members or subscribers to any rating bureau.
19. With two exceptions all members and subscribers of the Bureau use the same rates, rating plan and coverage.
20. After paying the additional premium demanded, plaintiff took no further action before the administrative body of the State, the Insurance Commissioner, and did not communicate further with any of the parties to this action.
21. The action was begun on August 17, 1948, and, after setting up the facts, plaintiff says: that the conduct of the defendants described above "is a pattern of action followed under contract or conspiracy between them in restraint of trade or commerce among the several states" and violates Chapter 647, Section 1, 26 Stat. 209, as amended, Chap. 690, Title VIII, 50 Stat. 693, Title 15 U.S.C.A. § 1, being the Sherman Act.
22. Complaint also alleges that Act No. 116 of the Acts of the General Assembly, 1947, p. 265, Arkansas Statutes, 1947, Annotated, Vol. 6, p. 168, Secs. 66-417 et seq., violates the provisions of Section 1 of the Sherman Act "to the extent that it purports to justify the conduct of the defendants and to give to said conduct the color of legality."
23. Plaintiff also contends that Public Law No. 15, the McCarron-Ferguson Act, Title 15 U.S.C.A. § 1011 et seq., is unconstitutional, in that:
(a) Congress may not delegate to individual states power to legislate within the *964 Commerce Clause of the United States Constitution, Art. 1, § 8, cl. 3, and,
(b) Congress cannot suspend general laws for a period of time except under the war powers.
It then contends that if Public Law 15 is found to be constitutional, it is not applicable to Act 116 of the General Assembly of the State of Arkansas, 1947.
24. It is also contended that Act 116 of the Acts of the General Assembly of the State of Arkansas is invalid in that it conflicts with the State Constitution and the anti-trust laws of Arkansas.
25. And that the acts of the defendants were not authorized by Act 116.
26. Virtually all of the facts are matters of public record, and appropriate stipulations having been made admitting the affirmative facts in defendants' answers, upon a hearing for a summary judgment under Rule 56, and on pre-trial hearing under Rule 16 of the Federal Rules of Civil Procedure, 28 U.S.C.A., the court found there exists no genuine dispute as to any material facts and that all such facts are now before the Court.
27. Briefs were submitted by all interested parties, and the cause is now submitted upon the motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.
The Court concludes the law to be:
1. The Sherman Act, 15 U.S.C.A. § 1, applies to transactions of insurance. United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440.
2. Public Law 15, Mar. 9, 1945, Chap. 20, Sec. 1, et seq., 59 Stat. 34, July 25, 1947, C. 326, 61 Stat. 448, Title 15 U.S.C.A. § 1011 et seq., known as the McCarron-Ferguson Act is constitutional. Prudential Insurance Company v. Benjamin, Insurance Commissioner, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342, 164 A.L.R. 476.
3. In the absence of public regulation or Congressional exemption, the price fixing activities of the Bureau involved in this case would constitute a violation of the Sherman Act. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 60 S.Ct. 811, 84 L.Ed. 1129, rehearing denied, Socony-Vacuum Oil Co. v. United States, 310 U.S. 658, 60 S.Ct. 1091, 84 L.Ed. 1421.
4. The Sherman Act is not violated by acts authorized and regulated by state statute. Parker, Director of Agriculture, et al. v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315. There the court said: "We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." 317 U.S. at page 350, 351, 63 S.Ct. at page 313. Also Prudential Insurance Company v. Benjamin, etc. supra. This is also expressly provided by the McCarran-Ferguson Act, which exempts insurance from the Sherman Act to the extent that such business is regulated by state law. Act 116 of Arkansas, 1947, constitutes proper regulation within the meaning of that statute.
5. The McCarron-Ferguson Act is not a delegation "to individual States power to legislate in the regulation of insurance transactions coming within the Commerce Clause," but is a proper division of power between the United States and the several States, a rendering unto Caesar the things that are Caesar's. Connecticut Light & Power Co. v. Federal Power Commission, 324 U.S. 515, 65 S.Ct. 749, 89 L.Ed. 1150. In this case the court found that the congressional action in extending federal jurisdiction to only "`those matters which are not subject to regulation by the States' * * *" constituted a legal standard that must be given effect in resolving conflicting claims by federal and state authorities of power to regulate. 324 U.S. at page 527, 65 S.Ct. at page 754. Also Prudential Insurance Company v. Benjamin, supra.
6. In its brief plaintiff asks that Act 116 of the Acts of the General Assembly of the State of Arkansas, 1947, be held to violate the provisions of the State constitution. In the absence of a decision of the Supreme Court of the State, a federal court will not hold a state statute unconstitutional under the State Constitution, unless no other course is possible. Harlow v. *965 Ryland, D.C., 78 F.Supp. 488, 490, Id., 8 Cir., 172 F.2d 784, and cases cited.
7. Act 116 of the Acts of the General Assembly of Arkansas is not in contravention of the laws or constitution of the State of Arkansas. National Union Fire Insurance Company v. Dickinson, Auditor, et al., 128 Ark. 367, 194 S.W. 254. It is a valid regulatory statute and the acts of the defendants were within its scope, and in accordance with its provisions.
8. Nowhere in this record does it appear that any facts or conditions existed which would justify plaintiff in fearing intimidation, boycott or coercion, or show that any such boycott, intimidation or coercion was attempted or threatened. Certainly the fact that plaintiff was advised that the insurance contract would be cancelled in accordance with its terms, unless premium was paid at the established rate is not sufficient. Plaintiff already knew this when it accepted the contract, and common business practice would have brought home to him this knowledge and information.
9. The plaintiff is not entitled to judgment for treble damages nor for injunctive relief. Keogh v. Chicago & Northwestern R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183.
10. Defendants are entitled to have a summary judgment, and summary judgment will be entered, adjudging the costs against the plaintiff. International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20.