The **AMERICAN HOSPITAL AND LIFE INSURANCE COMPANY**, Petitioner,

v.

**FEDERAL TRADE COMMISSION**, Respondent.

No. 16132.

United States Court of Appeals Fifth Circuit.

April 9, 1957.

J. D. Wheeler, San Antonio, Tex., Boyle, Wheeler, Gresham, Davis & Gregory, San Antonio, Tex., of counsel, for petitioner.

Robert B. Dawkins, Asst. Gen. Counsel, James B. Truly, Atty., Earl W. Kintner, Gen. Counsel, Alvin L. Berman, Atty. Federal Trade Commission, Washington, D. C., for respondent.

George R. Cross, Associate Counsel George S. Hanson, Gen. Counsel., New York City, for amicus curiae National Ass'n of Insurance Agents.

John S. Hamilton, Jr., Chicago, Ill., Franklin J. Marryott, Boston, Mass., L. J. Carey, Detroit, Mich., M. S. Chenault, Mason City, Iowa, J. P. Craugh, Utica, N. Y., James B. Hamilton, Owatonna, Minn., W. O. Head, Dallas, Tex., Leslie P. Hemry, Boston, Mass., John W. Joanis, Stevens Point, Wis., M. L. Landis, Van Wert, Ohio, Chase M. Smith, Chicago, Ill., J. M. Sweitzer, Wausau, Wis., Garl Watkins, Seattle, Wash., for American Mut. Alliance, Chicago, Ill.

Lawrence Pomeroy, New York City, Palmer, Serles, Delaney, Shaw & Pomeroy, New York City, of counsel, for National Ass'n of Ins. Brokers, Inc.

Whitney North Seymour, New York City, George G. Gallantz, Simpson Thacher & Bartlett, New York City, of counsel, for Health Ins. Ass'n of America.

Hugh B. Cox, H. Thomas Austern, Henry P. Sailer, Washington, D. C., Covington & Burling, Washington, D. C., of counsel, for Life Ins. Ass'n of America and American Life Convention, amici curiae.

Edmund G. Brown, Atty. Gen., of California, Harold B. Hass, Deputy Atty. Gen. of California, for the State of California.

John Ben Shepperd, Atty. Gen. of Texas, Will D. Davis, Appellate Asst., Austin, Tex., for the State of Texas.

A joinder to the brief of amicus curiae of the State of Texas was filed by the Attorneys General of the following States: New York, Louisiana, Maryland, North Dakota, New Hampshire, New

Mexico, Florida, Idaho, Kentucky, Maine, Mississippi, Missouri, Nebraska, Wisconsin, Wyoming, Utah, Connecticut.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The petitioner, the American Hospital and Life Insurance Company, is a corporation of Texas. Its principal or home office is in San Antonio, Texas. It is engaged in the business of writing health and accident insurance. It has been licensed to do business and is doing business in Arizona, Arkansas, Colorado, Illinois, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, New Mexico, Oklahoma and Tennessee, as well as in the State of Texas. In each of these states the petitioner has agents through whom its business is conducted. Each of the states has statutes forbidding deceptive and misleading advertising. The petitioner employed printed brochures which it sent from its home office to its agents for use in advertising and soliciting business. It did no advertising by newspapers or other periodicals or by radio or television. The Federal Trade Commission issued its complaint against the petitioner charging it with engaging in unfair and deceptive advertising practices in commerce in violation of the Federal Trade Commission Act, 15 U.S.C.A. § 41 et seq. The petitioner asserted that its advertising was not false, misleading or deceptive. It also contended that the Commission was without jurisdiction because of the McCarran Act, 15 U.S.C.A. § 1011 et seq. After a hearing the Examiner of the Commission, in an initial decision, held that the charges concerning the petitioner's advertising had not been sustained. The Examiner also held that the Commission was without jurisdiction, except as to petitioner's transactions in Mississippi where, at the time of the hearing, there was no adequate law regulating false and deceptive acts and practices. The Commission, on appeal, set aside the initial decision of the Examiner by a three to two decision. It determined that in passing the McCarran Act the Congress did not, and did not intend to, deprive the Commission of the power to regulate and control the interstate activities of insurance companies. It found the advertising brochures which had been sent from Texas to the other states were false and deceptive. It entered a Cease and Desist Order which is before us for review. In the opinion of the majority of the Commission, it was said that "there must remain an irreducible area of Commission jurisdiction over the interstate activities of insurance companies which cannot be reached by state law."

In the South-Eastern Underwriters case,[1] of which more will be hereafter said, Mr. Justice Black, in the majority opinion, observed that "Perhaps no modern commercial enterprise directly affects so many persons in all walks of life as does the insurance business". Although it has not been classed as a public utility charged with the duty of serving all who may apply,[2] the business of insurance has been more generally regulated than any other sphere of business activity not a public utility.[3] It was determined in 1869 that the insurance business did not constitute transactions in commerce,[4] and this doctrine was adhered to in many subsequent decisions.[5] In 1944 came the South-East-

1. United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S. Ct. 1162, 1167, 88 L.Ed. 1440.

2. National Union Fire Insurance Co. v. Dickinson, 128 Ark. 367, 194 S.W. 254.

3. For a statement of the reasons for and history of the regulation of insurance see 1 Richards on Insurance, 5th Ed. 136, et seq.

4. Paul v. State of Virginia, 8 Wall. 168, 19 L.Ed. 357.

5. These were reviewed by the Supreme Court in 1913, where it was said of the prior decisions "they constitute a formidable body of authority and strongly invoke the sanction of the rule of stare decisis." New York Life Insurance Co. v. Deer Lodge County, 231 U.S. 495, 34 S.Ct. 167, 169, 58 L.Ed. 332.

ern case, supra, where, in a four to three decision, with two justices of the court not participating, it was held generally that insurance businesses are engaged in "Commerce among the several States", and specifically that the Sherman Anti-Trust Act[6] applied to insurance activities. Mr. Chief Justice Stone, in his dissenting opinion, said that the action of the majority in overturning the precedents of seventy-five years "cannot fail to be the occasion for loosing a flood of litigation and of legislation, state and national, in order to establish a new boundary between state and national power, raising questions which cannot be answered for years to come * * * ".[7] The litigation has not yet reached the flood stage and the McCarran-Ferguson Act,[8] sometimes referred to as Public Law 15, and more often merely as the McCarran Act, has been the only national legislation of consequence resulting from the decision. This act was proposed by Senators McCarran and Ferguson and on March 9, 1945, it was signed by the President and became a law. The enactment is brief and many of its provisions are here pertinent.[9]

■ The purpose and effect of the McCarran Act has been stated by the Supreme Court, it saying:

"Obviously Congress' purpose was broadly to give support to the exist-

6. 15 U.S.C.A. § 1 et seq.

7. 322 U.S. 583, 64 S.Ct. 1189.

8. 59 Stat. 33, 15 U.S.C.A. §§ 1011–1015.

9. An act to express the intent of the Congress with reference to the regulation of the business of insurance.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That, The Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

"Sec. 2. (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

"(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1941, as amended, known as the Clayton Act [15 U.S.C.A. § 12 et seq.], and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

"Sec. 3. (a) Until June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, and the Act of June 19 [15 U.S.C.A. §§ 13–13b, 21a], 1936, known as the Robinson-Patman Antidiscrimination Act, shall not apply to the business of insurance or to acts in the conduct thereof.

"(b) Nothing contained in this Act shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation.

"Sec. 4. Nothing contained in this Act shall be construed to affect in any manner the application to the business of insurance of the Act of July 5, 1935, as amended, known as the National Labor Relations Act [29 U.S.C.A. § 151 et seq.], or the Act of June 25, 1938, as amended, known as the Fair Labor Standards Act of 1938 [29 U.S.C.A. § 201 et seq.], or the Act of June 5, 1920, known as the Merchant Marine Act, 1920 [46 U.S.C.A. § 861 et seq.].

"Sec. 5. As used in this Act, the term 'State' includes the several States, Alaska, Hawaii, Puerto Rico, and the District of Columbia.

"Sec. 6. If any provision of this Act, or the application of such provision to any person or circumstances, shall be held invalid, the remainder of the Act, and the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected."

ing and future state systems for regulating and taxing the business of insurance. This was done in two ways. One was by removing obstructions which might be thought to flow from its own power, whether dormant or exercised, except as otherwise expressly provided in the Act itself or in future legislation. The other was by declaring expressly and affirmatively that continued state regulation and taxation of this business is in the public interest and that the business and all who engage in it 'shall be subject to' the laws of the several states in these respects.

"Moreover, in taking this action Congress must have had full knowledge of the nation-wide existence of state systems of regulation and taxation; of the fact that they differ greatly in the scope and character of the regulations imposed and of the taxes exacted; and of the further fact that many, if not all, include features which, to some extent, have not been applied generally to other interstate business. Congress could not have been unacquainted with these facts and its purpose was evidently to throw the whole weight of its power behind the state systems, notwithstanding these variations." Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342. See North Little Rock Transp. Co. v. Casualty Reciprocal Exchange, 8 Cir., 1950, 181 F.2d 174; American Universal Ins. Co. v. Sterling, 3 Cir., 1952, 203 F.2d 159.

■ By the Act it was provided not only that the business of insurance should be subject to regulation by the States, but that until June 30, 1948,[10] the Sherman Act, the Clayton Act and the Robinson-Patman Act should not apply to the business of insurance, and after that date the Sherman and Clayton Acts and the Federal Trade Commission Act should apply to such business to the extent it is not regulated by State law. It is also provided that nothing contained in the Act shall render the Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion or intimidation. Then too it was provided that the Act should not affect the application of the National Labor Relations Act, the Fair Labor Standards Act or the Merchant Marine Act to the business of insurance. These provisions evidence a design on the part of Congress to yield to the States which had undertaken, or which would undertake, to regulate the insurance business in those fields in which the Sherman Act might otherwise have been applicable, with the exception of boycotts, coercion and intimidation. Such was the intent of the Congress. Senator McCarran, in response to the query of a colleague, said:

"The Senator will recall the Southeastern Underwriters case. The decision was startling. It created consternation in the insurance business because by previous decisions rendered during the past 50 years or more we were entitled to believe that the business of insurance was not to be classified as interstate commerce. The Supreme Court of the United States specifically, directly, and emphatically put it into the category of interstate commerce. It put it squarely under the Sherman Act, the Clayton Act, and other Acts. The pending bill is for the purpose of creating a moratorium for 3 years in order that the business of insurance shall not be interfered with by any Federal power under either the Clayton Act or the

10. The moratorium, intended to permit the States to enact regulatory measures if the laws were inadequate for the purpose, was extended from January 1, 1948, to June 30, 1948, by Act July 25, 1947, c. 326, 61 Stat. 448.

Sherman Act. So during the period of moratorium the various states themselves may take steps to regulate the business of insurance."

Senator McCarran again said: "The moratorium would not be continued; but if in the meantime the states themselves had regulated the business of insurance, the Sherman and Clayton Acts and the other Acts would not be effective."

■ ■ The Commission urges that a state does not have and never did have the power adequately to control the advertising practices of out-of-state insurance companies doing business within its boundaries. The Congress, seemingly, had no doubt that a state might exercise such power and we have none. The Supreme Court, we think, has expressed the same view in holding, with respect to another phase of state insurance regulation,

"These regulations can not be attacked merely because they affect business activities which are carried on outside the state. Of necessity, any regulations affecting the solvency of those doing an insurance business in a state must have some effect on business practices of the same company outside the state. Nothing in the Constitution requires a state to nullify its own protective standards because an enterprise regulated has its headquarters elsewhere. The power New York may exercise to regulate domestic insurance associations may be applied to foreign associations which New York permits to conduct the same kind of business." Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S.Ct. 602, 607, 87 L.Ed. 777.

If there is an "irreducible area" of Commission jurisdiction, we are of the firm conviction that the matter presented by the record before us is not within it.

■ The Commission relied heavily upon United States v. Sylvanus[11] in support of its jurisdiction. An indictment was returned, in the Sylvanus case, for use of the mails to defraud in the sale of insurance by mail. The McCarran Act was held to be no bar to prosecution. A fraudulent scheme carried on by use of the mails would violate the mail fraud acts even though the mails never crossed a state boundary.[12] The doctrine of the case, with the decision of which we have no disagreement, is of no bearing on the problem before us here. A violation of the postal laws does not of itself confer jurisdiction on the Federal Trade Commission.

The Commission's Examiner found that each of the States in which the petitioner did business, except Mississippi, had enacted laws for the regulation of false and deceptive advertising. Mississippi enacted such a law while the matter was pending before the Commission. This is not controverted. The Examiner found that the petitioner's advertising matter was not false, misleading or deceptive. Holding, as we do, that the Commission was without jurisdiction, we do not reach the merits.

The order of the Commission is set aside and

Reversed.

11. 7 Cir., 1951, 192 F.2d 96.

12. See New York Life Insurance Co. v. Deer Lodge County, supra.