**NATIONAL CASUALTY COMPANY, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 12944.**

United States Court of Appeals Sixth Circuit.

June 6, 1957.

John F. Langs, Detroit, Mich. (Langs, Molyneaux & Armstrong, by John F. Langs, Detroit, Mich., on the brief), for petitioner.

Robert B. Dawkins, Washington, D. C. (Earl W. Kintner, Gen. Counsel, Robert B. Dawkins, Asst. Gen. Counsel, J. B. Truly, Washington, D. C., on the brief), for respondent.

Brief Amici Curiae:

Covington & Burling, Washington, D. C., for Life Insurance Ass'n. of America and American Life Convention.

Thomas M. Kavanagh, Stanton S. Faville, Edmund E. Shepherd, Lansing, Mich., for the State of Michigan.

Latham Castle, William C. Wines, Chicago, Ill., for the State of Illinois.

M. L. Landis, et al., Chicago, Ill., for American Mut. Alliance.

Simpson, Thacher & Bartlett, New York City, for Health, Inc. Ass'n of America.

John J. O'Connell, and John W. Riley, Olympia, Wash., for the State of Washington.

Bruce Bennett, Little Rock, Ark., for the State of Arkansas.

Will Wilson, Will D. Davis, Austin, Tex., for the State of Texas.

Jo M. Ferguson, Earle V. Powell, Frankfort, Ky., for the Commonwealth of Ky.

Edmund G. Brown, Harold B. Haas, San Francisco, Cal., for the State of California.

Edwin K. Steers, James C. Jay, Indianapolis, Ind., for the State of Indiana.

John Anderson, Jr., Atty. Gen., Charles C. McCarter, Topeka, Kan., et al., for the State of Kansas.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The petitioner seeks a review of an order of the Federal Trade Commission requiring the petitioner to cease and desist from engaging in acts and practices in the conduct of its insurance business found by the Commission to be unfair and deceptive, in violation of the Federal Trade Commission Act, as amended. Sec. 45(a) (1), (6) and (c), Title 15, U.S.Code.

The complaint filed by the Commission alleged that the petitioner in the course

of its interstate business of selling accident and health insurance and for the purpose of inducing purchases of such insurance policies, was making statements and representations concerning the benefits of said policies of insurance which were false and deceptive, were to the prejudice and injury of the public, and constituted unfair and deceptive acts and practices in commerce within the meaning of the Federal Trade Commission Act. Petitioner by its answer admitted that it had advertised its accident and health insurance policies as charged in the complaint, but denied that its advertising was false or misleading, or was to the prejudice and injury of the public, or that it had violated the Federal Trade Commission Act. The petitioner affirmatively alleged that the Commission was without jurisdiction over its interstate insurance business because of state statutes regulating unfair and deceptive acts or practices within the respective boundaries of the states, within the scope and meaning of the McCarran Act, Sections 1011–1015, Title 15, U.S.C.A.

At the hearings which followed, the facts were shown to be as follows. Petitioner is a stock company incorporated under the laws of Michigan for the purpose of selling accident, health and all types of casualty insurance, with its principal office in Detroit, Michigan. It is licensed to sell such policies in all states of the United States, the District of Columbia and Hawaii, through resident agents located therein. It sells its insurance policies by solicitation from 350 to 400 direct, but independent, insurance agents throughout the nation, who operate under contract on commission only. Petitioner prepares and sends to these agents direct-mailing cards, advertising material and applications. The agents mail locally or distribute personally this material to likely prospects, secure leads thereby and then call and personally solicit the prospect. A small percent of direct mail advertising is sent by petitioner from its offices in Detroit to the public. 80% or more of petitioners' accident and health policies are issued by it from its home office after receipt, checking and

consideration by it of the prospect's signed application which has been secured by the agent. Any policy issued by petitioner is forwarded to the agent for delivery to the insured. Premium notice forms are printed by the petitioner and furnished to the agents who mail them out locally. Premium collection is the agent's responsibility, only 5% or less being remitted directly to the petitioner in cases of unusual or temporary situations.

The Hearing Examiner held that four of the five categories of advertising set forth in the complaint were unfair and deceptive as alleged. He held that the Commission's overall interstate jurisdiction was limited to the four states and the District of Columbia which had no statute regulating unfair or deceptive acts or practices in the business of insurance within their respective boundaries. He also held that the Commission had jurisdiction in all states over the advertising practices of petitioner to the extent that its deceptive advertising material was disseminated by the petitioner by the use of the United States mails. He issued a Cease and Desist order to that effect.

Upon appeal, the Commission reversed the Examiner in part, holding by a three-to-two decision that it had full jurisdiction over the interstate sale of insurance by means of unfair and deceptive advertising practices, irrespective of whether the state had adopted a local law regulating such practices within its boundaries. Since, in our opinion, this case will be disposed of on the jurisdictional issue, it is unnecessary to discuss petitioner's contentions that its advertising was not false or misleading and that the proceeding and the issuance of a Cease and Desist order did not serve any public interest. The jurisdictional question involves the construction and application of the McCarran Act referred to above.

The background giving rise to the McCarran Act is important.

In 1869, the Supreme Court upheld the validity of a Virginia statute which regulated foreign insurance companies, on the ground that the statute did not offend

the Commerce Clause of the U. S. Constitution because "issuing a policy of insurance is not a transaction of commerce." Paul v. State of Virginia, 8 Wall. 168, 183, 19 L.Ed. 357. Thereafter, in similar cases, the Supreme Court consistently ruled that the business of insurance was not commerce. In New York Life Insurance Co. v. Deer Lodge County, 231 U.S. 495, 503–504, 510, 34 S.Ct. 167, 172, 58 L.Ed. 332, the Supreme Court, as late as 1913 held to this view, stating in its opinion in that case that "contracts of insurance are not commerce at all, neither state nor interstate." However, in 1944, the Supreme Court in United States v. South-Eastern Underwriters Association, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440, a case involving alleged violations of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, again considered the question and in a four-to-three decision, held that the business of insurance conducted across state lines was interstate commerce subject to regulation by Congress under the Commerce Clause.

The Supreme Court's decision was vigorously protested in the insurance field. The insurance companies, relying upon the court's previous rulings, had engaged in practices which were prohibited under the federal anti-trust laws but which were permitted under the laws and regulations of the various states. The states feared the loss of large revenues under their laws taxing insurance sold within the states, which, under the new ruling, might be held discriminatory of interstate commerce and, therefore, unconstitutional. As a result of this vigorous reaction to the decision, congress passed the so-called McCarran Act in 1945. This Act provides in part as follows:

"[Sec. 1] Congress hereby declares that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

"Sec. 2. (a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business. (b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, That after January 1, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act [15 U.S.C.A. § 12 et seq.], and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended [15 U.S.C.A. § 41 et seq.], shall be applicable to the business of insurance to the extent that such business is not regulated by State law.

"Sec. 3. (a) Until January 1, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, and the Act of June 19, 1936, known as the Robinson-Patman Anti-discrimination Act, shall not apply to the business of insurance or to acts in the conduct thereof. (b) Nothing contained in this Act shall render the said Sherman Act inapplicable to any agreement to boycott, coerce, or intimidate, or act of boycott, coercion, or intimidation.

"Sec. 4. Nothing contained in this Act shall be construed to affect in any manner the application to the business of insurance of the Act of July 5, 1935, as amended, known as the National Labor Relations Act [29 U.S.C.A. § 151 et seq.], or the Act of June 25, 1938, as amended, known as the Fair Labor Standards Act of 1938 [29 U.S.C.A. § 201 et seq.] or the Act of June 5, 1920, known as the Merchant Marine Act, 1920 [46 U.S.C.A. § 861 et seq.]"

The petitioner contends that the purpose of the Act was generally to restore the insurance business to the situation existing prior to the decision in the South-Eastern Underwriters case, and that in states in which the insurance business was regulated by state law, such business was not subject to regulation by the Federal Trade Commission.

The Commission does not challenge the validity of any state statute regulating the business of insurance, nor the validity of the McCarran Act. It points out that state laws have no extra-territorial effect and cannot regulate the business of insurance beyond the borders of the particular state; that prior to the South-Eastern Underwriters Association case, the states were authorized to regulate the intrastate aspects of the insurance business, even though state regulation might affect interstate commerce in insurance; that following the decision in the South-Eastern Underwriters Association case there was a field of interstate business of insurance which the states could not regulate and which Congress did not intend to leave unregulated; that in enacting the McCarran Act, Congress intended only to authorize the states to exercise their police power in the same manner they had exercised it when the business of insurance was not considered to be commerce, and gave the states until January 1, 1948, later extended by statute to June 30, 1948, in which to define a reasonable area of state police power, beyond which they could not go; that after that date the Commission was authorized to regulate insurance on different grounds, namely, regulating the use of the interstate channels of commerce; and that the Federal and state laws in the field of insurance supplement and reinforce one another in order to provide full protection to the public.

The wording of the Act clearly indicates that, regardless of the ruling in the South-Eastern Underwriters Association case, Congress did not intend to take from the states the regulation of insurance within the state. Section 1 declares that "the *continued* regulation * * *

by the several States of the business of insurance is in the public interest, * * *" (emphasis added). Section 2 states, "The business of insurance * * * shall be subject to the laws of the several States which relate to the regulation or taxation of such business." The real question is, to what extent, if any, did Congress provide for federal regulation in addition to state regulation.

The Act is equally clear, by the express wording of Section 3, that until January 1, 1948, subsequently extended by amendment to June 30, 1948, the business of insurance was not subject to the Federal Trade Commission Act or certain other federal regulatory acts. After January 1, 1948, according to Section 2 of the Act, the Federal Trade Commission Act and the Sherman and Clayton Acts were made "applicable to the business of insurance to the extent that such business is not regulated by State law." That is the only express grant of power to the Federal Trade Commission over the business of insurance contained in the Act. It is a grant expressly limited by it terms to insurance business which "is not regulated by State law." We do not find in those words the "clear and specific grant of jurisdiction" to the Federal Trade Commission which the Commission claims is given to it by the Act. On the contrary, we find the logical and reasonable conclusion from the two sections to be that jurisdiction over the business of insurance was granted to the Federal Trade Commission after January 1, 1948, *only* where the business was not regulated by state law.

There is some merit in the Commission's contention that since the decision in the South-Eastern Underwriters Association case there is a field of interstate insurance, outside the jurisdiction of the states, which should be subject to federal regulation. But it does not follow that it was the purpose of the McCarran Act to accomplish such result, desirable though it might be. Congress realized that by reason of the Supreme Court decision federal jurisdiction existed over the interstate business of insurance. The en-

actment of the McCarran Act was to correct that situation. It expressly prohibited the exercise of such jurisdiction for a period of approximately three years. After that period it made a restrictive grant of jurisdiction. In order to sustain the contention of the Commission, we must imply a broader grant of jurisdiction to the Commission after the three-year period than is contained in the express words of the Act. We do not believe that Congress would leave to implication such an important segment of the overall question of jurisdiction which it was dealing with, when it could easily have been provided for by express words. A construction of the Act does not sustain the contention.

Section 4 of the Act provides that nothing contained in the Act shall be construed to affect the application to the business of insurance of the National Labor Relations Act, the Fair Labor Standards Act or the Merchant Marine Act. If it was intended by the Act to retain in or give to the agencies of the Federal Government jurisdiction over insurance companies engaged in interstate commerce, irrespective of its regulation by state law, this section of the Act was unnecessary and meaningless since the acts referred to would be applicable by reason of the Supreme Court's decision without the provisions of Section 4.

It is probable that in the regulation of the business of insurance by both the federal and state governments there will develop a conflict of policies. The parties agree that in such event the federal regulation would control. If so, "the continued regulation and taxation by the several States," referred to in Section 1 of the Act as being in the public interest, would no longer exist.

The general purpose of restoring to the states the right to regulate the business of insurance as it existed prior to the 1944 decision was carried out by the moratorium provided by the Act until January 1, 1948. During the moratorium there was no jurisdiction over the business of insurance in the Commission. During that period the states which did not have such laws had the necessary time in which to pass regulatory legislation. The tie-in between the moratorium and the obvious invitation to enact regulatory legislation while it existed, both recognized the need of regulating the business of insurance and indicated an intention to permit the states to do it to the exclusion of the federal government if they elected to do so. It seems more logical to conclude that it was the purpose of the moratorium to deprive the federal agencies of their newly acquired jurisdiction over the business of insurance in order to restore such jurisdiction to the states if they elected to assume it, than to conclude that it was the purpose of the moratorium to deprive the agencies of their newly acquired jurisdiction for only a short period of time after which it would be given back to them regardless of what the states did in the meantime.

This construction of the Act is in accord with statements by Senator McCarran on the floor of the Senate on February 26 and 27, 1945, in connection with the Senate's consideration of the Conference Report on S. 340. Senator McCarran stated: "The moratorium would not be continued, but if in the meantime the states themselves had regulated the business of insurance, the Sherman and Clayton Acts and the other acts would not become effective." He also said: "During the 3-year moratorium the states may, if they see fit to do so, enact legislation for the purpose of regulation. If they do enact such legislation, to the extent that they regulate, they will have taken the business of insurance out from under the Sherman Anti-Trust Act, the Clayton Act, and the other acts. If during the moratorium the states do not enact legislation for regulatory purposes, then on January 1, 1948, the Sherman Act, the Clayton Act, and the other acts will become immediately applicable." 91 Cong.Rec. 1442-1444.

The Supreme Court, since the passage of the Act, has expressed similar views. In Prudential Insurance Co. v. Benjamin, 328 U.S. 408, 429–431, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342, the court said: "Ob-

viously Congress' purpose was broadly to give support to the existing and future state systems for regulating and taxing the business of insurance." It referred to the nation-wide existence of state systems of regulation and taxation and to the great difference in scope and character of the regulations imposed and of the taxes exacted. It then said: "Congress could not have been unacquainted with these facts and its purpose was evidently to throw the whole weight of its power behind the state systems, notwithstanding these variations." Continuing with the discussion, it later said, " * * * it clearly put the full weight of its power behind existing and future state legislation to sustain it from any attack under the commerce clause to whatever extent this may be done with the force of that power behind it, subject only to the exceptions expressly provided for." In a later case, Maryland Casualty Co. v. Cushing, 347 U.S. 409–413, 74 S.Ct. 608, 610, 98 L.Ed. 806, the court said: "Suffice it to say that even the most cursory reading of the legislative history of this enactment makes it clear that its exclusive purpose was to counteract any adverse effect that this court's decision in United States v. South-Eastern Underwriters Association, 332 U.S. 533, 64 S. Ct. 1162, 88 L.Ed. 1440, might be found to have on State regulation of insurance." In Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310, 319, 75 S.Ct. 368, 373, 99 L.Ed. 337, the court in reviewing the enactment of the McCarran Act said: "Passage of the bill followed United States v. South-Eastern Underwriters Ass'n, supra, holding that, despite the constitutional doctrine embodied in the Paul v. State of Virginia line of cases, Congress had power under the Constitution to regulate interstate insurance transactions. In the South-Eastern case, however, all the opinions had emphasized the historical fact that States had always been free to regulate insurance. The measure Congress passed shortly thereafter, known as the McCarran Act, was designed to assure that existing state power to regulate insurance would continue."

In making its ruling the Commission followed its prior ruling in American Hospital and Life Insurance Co. case, which at that time had not been reviewed by the Court of Appeals. On April 9, 1957, following the argument on appeal and submission of the present case, the Court of Appeals for the Fifth Circuit handed down its opinion on its review holding that the Commission was without jurisdiction in the matter and setting aside the Cease-and-Desist Order in that case. American Hospital and Life Insurance Co. v. Federal Trade Commission, 5 Cir., 243 F.2d 719. We agree with the ruling of the Court of Appeals in that case.

We are of the opinion that the Federal Trade Commission was without jurisdiction to regulate the insurance business of the petitioner in those states where such business is regulated by state law. The order of the Commission is set aside and the case remanded to the Commission for further proceedings consistent with this opinion.